# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:17-cr-278-MOC-DCK-1

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| RYSUON SHABARQUIS NORRIS, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 40). Defendant seeks early release from prison under 18 U.S.C. § 3582(c)(1)(A) based on the COVID-19 pandemic. The Government has responded in opposition to the motion.

## I.     BACKGROUND

On May 1, 2018, Defendant pled guilty to possession of a firearm in furtherance of drug trafficking. (Doc. No. 28 at 3). Defendant was also indicted for possession with intent to distribute a controlled substance and two counts of possession of a firearm by a felon. (Id.). Ultimately, those three counts were dismissed pursuant to a plea agreement. (Doc. No. 21). This Court sentenced Defendant to 60 months in prison. (Doc. No. 34).

Defendant is 27 years old and imprisoned at FCI Butner Medium II, a Bureau of Prisons (BOP) facility in North Carolina. See www.bop.gov/inmateloc/. His scheduled release date is November 27, 2021. Id. BOP reports that FCI Butner Medium II has 27 cases of COVID-19 in its inmate population. www.bop.gov/coronavirus/ (last visited March 2, 2021). BOP has administered 60,037 doses of a COVID-19 vaccine to inmates and staff. Id. At FCC Butner,

BOP has thus far completed vaccinations for 576 staff and 486 inmates. Id.

BOP has released 22,228 inmates to home confinement since the Attorney General's memo to BOP on March 26, 2020, instructing BOP to prioritize home confinement during the pandemic. Id. After review of Defendant's case, BOP declined to release him explaining in part that he is considered "Healthy or Simple Chronic Care" and "classified as a Medical Care Level I." (Doc. No. 40 at 9). Further, the BOP Regional Director informed Defendant that he can "complete all activities of daily living independently" and does not meet the BOP's criteria for release or reduction in sentence. (Id.).

Defendant contends he has health issues that present extraordinary and compelling reasons for his release when considered with the possibility that he may contract COVID-19 in the future. See (Def.'s Mot. at 1). He sets forth his health issue as "sickel [sic] cell Beta Thalassaemia." (Id.). He also cites that he had his gallbladder removed. (Id.).

## II. DISCUSSION

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a non-binding policy statement addressing

motions for reduction of sentences under § 3582(c)(1)(A).[1] As relevant here, the non-binding policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The policy statement includes an application note specifying the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the

---

[1] In a recent decision, the Fourth Circuit determined that the policy statement is no longer binding on courts deciding compassionate release motions because U.S.S.G. § 1B1.13 was enacted before the First Step Act. United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). Specifically, the Fourth Circuit held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. § 3582(c)(1)(A)(i). Id. at 281–83. The McCoy Court reasoned that, because Section 1B1.13 applies only to motions brought by the Bureau of Prisons, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate release. Id. In place of the no-longer-applicable policy statement, McCoy permits "courts [to] make their own independent determinations of what constitutes an 'extraordinary and compelling reason[ ]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" Id. at 284. The McCoy Court noted, however, that Section 1B1.13 "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. Because this Court finds that the policy statement is extremely helpful in assessing motions for compassionate release brought by defendants, the Court will rely on it as guidance.

-3-

environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C).

Finally, in addition to the non-binding policy statement, the Fourth Circuit has recently clarified that courts may make their own independent determinations as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). United States v. McCoy, 981 F.3d 271 (4th Cir. 2020).

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, cannot alone provide a basis for a sentence reduction. The conditions described in U.S.S.G. § 1B1.13 encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under Section 3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that

condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I).

Defendant's request for a sentence reduction will be denied because he has failed to show extraordinary and compelling circumstances warranting his early release from prison. The Centers for Disease Control and Prevention (CDC) categorizes certain medical conditions as either (1) those that create an increased risk of several illness from the COVID-19 virus or (2) those that might create such a risk. [www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with](www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with) medicalconditions.html (last visited March 1, 2021). Of relevance here, the CDC distinguishes sickle cell disease and other hemoglobin disorders, like thalassemia, when warning of risks associated with COVID-19. (Id.). The CDC places sickle cell disease in the first aforementioned category and thalassemia in the second.

Defendant provided the Court with five pages of childhood medical records, from 2007 to 2012, which suggest Defendant was diagnosed with thalassemia, but not sickle cell disease. See (Doc. No. 41 at 1). Further, Defendant attached to his motion a letter from his mother. (Def.'s Mot. at 2). In the letter, Defendant's mother states that Defendant has a "blood disorder called Beta Thalassemia." (Id.). Defendant's prison medical do not appear to mention a diagnosis of sickle cell disease or thalassemia. Finally, Defendant's PSR, paragraph 53, states the "Defendant describes his physical health as good and states he is not under the care of a physician nor prescribed any medication." (Doc. 28 at 14). It goes on to recount incidents where he has suffered gunshot wounds and discusses removal of his gallbladder and half of his bladder. Id. The relevant paragraph ends by stating "[Defendant] reports he does not have any recurring medical problems from his surgery." Id.

-5-

Case 3:17-cr-00278-MOC-DSC    Document 47    Filed 03/12/21    Page 5 of 7

Therefore, it appears that Defendant was once diagnosed with beta thalassemia, but not sickle cell disease. Defendant's sixty-two pages of medical records from the last few years do not reflect thalassemia or other complications from gallbladder removal. It further appears that Defendant's childhood diagnosis, and gallbladder removal, was causing him no concern when this Court sentenced him. The CDC recognizes that beta thalassemia might create complications in someone diagnosed with COVID-19. Stated another way, the CDC does not consider thalassemia to present the same risk as sickle cell disease. Here, Defendant has not produced sufficient evidence for this Court to conclude that Defendant's health situation rises to an extraordinary and compelling reason justifying his early release from prison.

In any event, even if Defendant suffers from medical conditions that make him more susceptible to complications from COVID-19, the Court finds that he has not shown extraordinary and compelling reasons to be granted compassionate release. Here, the conduct in the instant case involved Defendant being stopped by police in June of 2016 and then again in June of 2017, both times found in possession of a firearm and both times in possession of a controlled substance. (Doc. No. 28 at 4–5). On the first occasion, Defendant argued with police when instructed to get out of his vehicle and had to be "assisted" out of the vehicle by police. (Id.). Officers found a firearm under the driver's seat and 38 individually wrapped crack rocks and a bag of marijuana in a compartment left of the steering wheel. (Id.). On the second occasion, Defendant's two young daughters were in the backseat, his loaded firearm was under the driver's seat, and his marijuana and digital scale were in the center console. (Id.).

Prior to Defendant's federal conviction, Defendant was convicted of a violent offense, strong arm robbery, in South Carolina. (Id. at 6). The facts provided in the PSR suggest a

firearm was used in the commission of the crime. (Id. at 7). Defendant repeatedly failed to follow court orders while out of custody in that case. (Id. at 6–7). He was placed on probation; he violated probation and it was revoked. (Id.). He was imprisoned, then paroled. (Id.). He violated parole multiple times and it was ultimately revoked. (Id.). In fact, Defendant was on parole when he was stopped by police in the instant case. Finally, Defendant has two misdemeanor convictions for possession of marijuana. (Id. at 8).

To promote respect for the law, deter Defendant, deter others, prevent future crimes of Defendant, and provide adequate punishment, this Court finds that Defendant must serve his bargained-for and justly imposed sentence of 60 months for possessing a firearm in furtherance of a drug trafficking crime. In sum, for all these reasons, the Court denies Defendant's motion. This Court notes that, in light of United States v. McCoy, the Court has made its own independent determination as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). Defendant has simply not presented "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). Having thus considered defendant's motion and reviewed the pleadings, the Court enters the following Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 40), is **DENIED**.

Signed: March 12, 2021

Max O. Cogburn Jr.
United States District Judge